UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 25-cr-10207-IT |
| ERIC SPOFFORD,<br>            Defendant | ) ) ) ) ) | |

**MOTION TO DISMISS ALL COUNTS**
**ON FIRST AMENDMENT OVERBREADTH GROUNDS**
**WITH INCORPORATED MEMORANDUM OF LAW**

Now comes the Defendant, Eric Spofford, by and through undersigned counsel, pursuant to the First Amendment, and hereby moves the Court for an order dismissing all counts of the indictment, as 18 U.S.C. §2261A, as amended by Congress, is unconstitutionally overbroad. *See Counterman v. Colorado*, 600 U.S. 66 (2023).

In 2013, Congress amended §2261A in several critical respects. First, Congress inserted an "objective" standard into the statute as to the "emotional distress" element. To wit, the law now imposes criminal punishment for communications that "would be reasonably expected to cause substantial emotional distress." 18 U.S.C. §§2261A(1)(B) and (2)(B). Second, in so doing, Congress removed the pre-existing requirement that the victim actually suffer emotional distress. *See* 18 U.S.C. §2261A (effective January 5, 2006 to September 30, 2013). Third, Congress failed to include any specific *mens rea* requirement regarding the effect of the defendant's communications on the alleged victim. As the Supreme Court's decision in *Counterman* teaches, these three features conspire to render the statute unconstitutionally

1

overbroad. Indeed, *Counterman* expressly rejected an objective reasonable person standard for prosecuting speech analogous to that employed by §2261A as insufficiently protective of First Amendment rights.

The result, here, is a federal criminal statute that could be applied to millions of instances of "harassing" online conduct, even where the speaker lacks any conscious awareness that the communications could cause emotional distress, where the speaker lacks any intent to cause any emotional distress, and where the recipient does not actually suffer any emotional distress. As the Court made clear in *Counterman*, such an overbroad statute violates the First Amendment.

As further grounds and reasons therefore, Mr. Spofford relies upon the memorandum of law incorporated herein.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Mr. Spofford respectfully requests oral argument on the within motion.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

The government, by and through Assistant U.S. Attorney Jason Casey, advises it will oppose this motion.

## MEMORANDUM OF LAW

I.   **Background.**

Mr. Spofford stands charged with one count of conspiracy to commit stalking through interstate travel and using a facility of interstate commerce, in violation of 18 U.S.C. §2261A(1)(B) and (2)(B) ("Count 1"); one count of stalking using a facility of interstate commerce and aiding and abetting same, in violation of 18 U.S.C. §2261A(2)(B) ("Count 2");

and two counts of stalking through interstate travel and aiding and abetting same, in violation of 18 U.S.C. §2261A(1)(B), one occurring on May 20, 2022 ("Count 3"), and the second occurring on May 20 and 21, 2022 ("Count 4"). *See generally* Dkt. 1.

As described in more detail in a contemporaneously filed pleading ("Motion to Dismiss One Object of Count 1 and the Entirety of Count 2"), these charges are predicated upon Mr. Spofford's alleged enlistment of others to retaliate against the author and the editor of a New Hampshire Public Radio article regarding alleged misconduct by Mr. Spofford during his tenure as Chief Executive Officer of Granite Recovery Centers. The government alleges that Mr. Spofford's co-conspirators threw bricks through the victims' windows and spray painted "lewd and threatening language" on their homes. Dkt. 1 ¶ 11.

**II. Argument.**

    A. *A constitutional anomaly: the vital importance of the First Amendment to our democracy enables a defendant to bring a facial challenge to an overbroad statute, even when a law applies to a particular individual in a constitutionally unobjectionable way.*

"The First Amendment limits the government's power to punish offensive or annoying speech." *United States v. Yung*, 37 F.4th 70, 74 (3d Cir.2022). As such, while "[s]peech is often provocative and challenging. . . . [it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (citation omitted). If, to the contrary, "absolute assurance of tranquility" were "required, we may as well forget about free speech. Under such a requirement, the only 'free' speech would consist of platitudes. That kind of speech does not need constitutional protection." *Id.* at 463 (citation omitted); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 575 (2011)

3

("Many are those who must endure speech they do not like, but that is a necessary cost of freedom.").

For these reasons, "[f]rom 1791 to the present, the First Amendment has permitted restrictions upon the content of speech" in only "a few limited areas." *Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (citation omitted). One such "historically unprotected category of communications" is so-called "[t]rue threats," defined as "serious expression[s] conveying that a speaker means to commit an act of unlawful violence." *Id.* at 74 (citation omitted). "The 'true' in ['true threats'] distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* (citation omitted). "[S]peech integral to criminal conduct" is similarly unprotected. *United States v. Ackell*, 907 F.3d 67, 75 (1st Cir. 2018) (citation omitted).

Outside of these carefully limited areas of unprotected speech, the First Amendment zealously protects a citizen's freedom of expression and guards against overbroad statutes, because "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech–especially when the overbroad statute imposes criminal sanctions." *Ackell*, 907 F.3d at 72 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). Indeed, the concern is so great that, while litigants ordinarily "lack standing to challenge laws simply because they 'may conceivably be applied unconstitutionally to others,'" the standing requirement has been relaxed in First Amendment cases "to stop overbroad laws from chilling protected speech." *Yung*, 37 F.4th at 76 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)). In this regard, the "[o]verbreadth doctrine is a constitutional anomaly." *Id.* Thus, "even when a law may be

applied to a particular individual in a constitutionally unobjectionable way, if that individual can show that the law is facially overbroad–that is, that it 'punishes a substantial amount of protected speech, judged in relation to the statute's plainly legitimate sweep,'–the proper remedy is to 'invalidate *all* enforcement of that law.'" *Ackell,* 907 F.3d *at 72* (quoting *Hicks*, 539 U.S. at 118-19). Such is the case here.[1]

    B. *Congress amends 18 U.S.C. §2261A, effective October 1, 2013*.

18 U.S.C. §2261A(1)(B) makes it unlawful for anyone to travel in interstate commerce "with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that . . . causes, attempts to cause, ***or would be reasonably expected to cause substantial emotional distress***" to the victim. Another subsection charged here applies to defendants who, with the same intent (*e.g.*, to harass or intimidate), "use[] . . . any . . . facility of interstate or foreign commerce to engage in a course of conduct that . . . causes, attempts to cause, ***or would be reasonably expected to cause substantial emotional distress***" to the victim. §2261A(2)(B). Congress added the two bolded, italicized clauses to the statute in 2013. *See* 18 U.S.C. §2261A (effective October 1, 2013); *Ackell*, 907 F.3d at 73 (quoting Pub.

---

[1] While the First Circuit held that §2261A "targets conduct, . . . rather than speech protected by the First Amendment," *Ackell*, 907 F.3d at 74, the defense respectfully preserves the argument that this characterization is incorrect. *See also United States v. Dennis*, 132 F.4th 214, 226 (2d Cir.2025) (noting that defendant acknowledged "that §2261A(2)(B), 'by its own terms, regulates conduct, or more precisely, courses of conduct,' that do not necessarily implicate speech," and defendant did "not contend that, on its face, the statute violates the First Amendment"). Rather, as the Third Circuit observed, §2261A "reaches a lot of speech: it targets emails, texts, and social media posts . . . ." *Yung*, 37 F.4th at 77. In any event, as *Ackell* acknowledged, "the Supreme Court has not categorically foreclosed the possibility that a statute that does not facially regulate speech could be [unconstitutionally] overbroad . . . ." *Ackell*, 907 F.3d at 74 (citation omitted).

5

L. No. 113-4, § 107(b) (2013)).

The prior version of the statute, at issue in *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014), required proof that the defendant's unlawful course of conduct in fact "cause[d] substantial emotional distress" to the victim or "place[d] [the victim] in reasonable fear of . . . death . . . or serious bodily injury." *Id.* at 430 (quoting 18 U.S.C. § 2261A(2)(A) (effective January 5, 2006 to September 30, 2013)).[2] In other words, the prior version of the statute required a showing of "actual[]" harm to the victim. *Id.* at 433. In affirming the denial of the Sayer's motion to dismiss, the First Circuit rejected various hypothetical unconstitutional applications of the statute proffered by the defendant as "ignor[ing] the statute's intent and causation requirements," *i.e.*, the requirement that the course of conduct actually cause substantial emotional distress, "as well as the requirement that the defendant engage in numerous acts, or 'course of conduct,' that amount to stalking." *Id.* at 436, n.9.

    C. *By injecting an "objective" standard of harm, removing any actual harm requirement, and failing to include any specific mens rea requirement with respect to potential harm to the victim, the 2013 Congressional amendment rendered §2261A unconstitutionally overbroad.*

As the Supreme Court's recent decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), makes clear, the insertion of an "objective" standard of harm into §2261A, the concomitant removal of any actual harm causation requirement, and the lack of any *mens rea* requirement with respect to the effect of the communications on the victim, all render the statute

---

[2] *See also Sayer*, 748 F.3d at 430, n.3 (noting that "[a]fter Sayer was convicted of one count of cyberstalking under § 2261A(2) and sentenced, the Violence Against Women Reauthorization Act of 2013, Pub.L. No. 113–4, § 107(b), amended 18 U.S.C. § 2261A(2)," and the "amended statute has no impact on this appeal, as it is not retroactive, and so the 2006 version of § 2261A applies to Sayer").

6

unconstitutionally overbroad.

The defendant in *Counterman* had been charged under a state statute requiring proof "that a reasonable person would have viewed" the relevant "messages as threatening," but not requiring "any kind of subjective intent to threaten." 600 U.S. at 71 (citation omitted). The Supreme Court vacated the defendant's conviction, "holding that the State must prove in true-threat cases that the defendant had some understanding of his statements' threatening character." *Id.* at 73. More specifically, the Court held that the government must prove recklessness—*i.e.*, that the defendant "consciously disregard[ed] a substantial [and unjustifiable] risk that the conduct w[ould] cause harm to another." *Id.* at 79 (citation omitted). *Counterman* explained that this "subjective mental-state requirement" was necessary to avoid an impermissible "chilling effect":

> Prohibitions on speech have the potential to chill, or deter, speech outside their boundaries. A speaker may be unsure about the side of a line on which his speech falls. Or he may worry that the legal system will err, and count speech that is permissible as instead not. Or he may simply be concerned about the expense of becoming entangled in the legal system. The result is self-censorship of speech that could not be proscribed—a cautious and restrictive exercise of First Amendment freedoms.

*Id.* at 75 (citations omitted).[3]

Critically important for present purposes, the Court further explained that "[a]n objective standard, turning only on how reasonable observers would construe a statement in context, would make people give threats 'a wide berth.'" *Id.* at 78 (quoting *Rogers v. United States*, 422

---

[3] The recklessness standard imposed by the Court is far from a toothless requirement. Recklessness entails "morally culpable conduct, involving a deliberate decision to endanger another. In the threats context, it means that a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* (citations omitted). In other words, "reckless defendants have done more than make a bad mistake. They have consciously accepted a substantial risk of inflicting serious harm." *Id.* at 80.

U.S. 35, 47 (1975)). The "use of that standard," the Court cautioned, "would discourage the 'uninhibited, robust, and wide-open debate that the First Amendment is intended to protect.'" *Id*. (quoting *Rogers*, 422 U.S. at 48). Noting that its reasoning "came straight from this Court's decisions *insisting on a subjective element* in other unprotected-speech cases, whether involving defamation, incitement, or obscenity," the Court openly acknowledged that protecting against the chill of protected speech comes at the cost of "mak[ing] prosecution of otherwise proscribable, and often dangerous, communications harder." *Id.* at 78 (emphasis added). Nonetheless, the Court firmly concluded that "***the ban on an objective standard remains the same***, lest true-threats prosecutions chill too much protected, non-threatening expression." *Id*. (emphasis added).

The objective standard injected into §2261A in 2013, a decade before the *Counterman* decision, has now been eschewed by the Supreme Court. Indeed, the very harms identified in *Counterman* exist here. As now enacted, a citizen can be prosecuted and convicted under §2261A whether or not his harassing or intimidating communications had any real, actual impact on the intended recipient. Yet, the Court observed in *Counterman* that "[t]he existence of a threat," including a true threat subject to prosecution without offending the First Amendment, "depends . . . on 'what the statement conveys' to the person on the other end." *Counterman*, 600 U.S. at 74 (quoting *Elonis v. United States*, 575 U.S. 723, 733 (2015)). Indeed, it is only "[w]hen the statement is understood as a true threat" that "all the harms that have long made threats unprotected naturally follow." *Id.* Predicating criminal liability, and years in prison, on the impact a communication could have on a "reasonable" person, and not any actual harm inflicted upon the intended recipient of the communication, removes the "true" from the "threat."

Section 2261A's omission of any actual harm requirement brings a substantial amount of protected speech within the statute's scope. It is an unfortunate fact of life in 2025 that many social media users make a habit of speech designed to harass and intimidate those with whom they disagree, including regarding political matters. Indeed, a 2020 study found "that 41% of Americans have personally experienced some form of online harassment," including "[o]ffensive name-calling" and "[p]urposeful embarrassment," in addition to "[s]talking" and other more severe forms of harassment. Pew Research Center, The State of Online Harassment (Jan. 13, 2021).[4] Among "those who have experienced online abuse, politics is cited as the top reason for why they were targeted." *Id.*

Much of this conduct would fit neatly within the language of §2261A. For example, social media posts by prominent elected officials could readily be construed as intended to harass or intimidate, exposing the speakers to potential federal prosecution and up to five years' imprisonment. And, without a requirement of actual harm, such speech could be prosecuted even if exchanged between political provocateurs, neither of whom viewed the communication to result in any actual emotional distress, and neither of whom ever intended (or even conceived) the communication would result in any actual emotional distress. In other words, such speech could be prosecuted if a "reasonable person" would suffer substantial emotional distress. This is the kind of statute that will "discourage the ·uninhibited, robust, and wide-open debate that the First Amendment is intended to protect.'" *Counterman*, 600 U.S. at 78. And, precisely why the

---

[4] *Available at* https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/.

9

*Counterman* Court concluded "the ban on an objective standard remains the same, lest true-threats prosecutions chill too much protected, non-threatening expression."[5]

    D. *The statutory mens rea requirement of intent to harass or intimidate does not cure the overbreadth problem.*

The statutory *mens rea* requirement of an intent to harass or intimidate does not sufficiently narrow the statute to avoid these unconstitutional applications. "There is," simply put, "no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.); *see also United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022) ("Even where emotional distress is reasonably expected to result, the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words."); *Yung*, 37 F.4th at 78 ("[T]he broader definitions of 'harass' and 'intimidate' can describe nonviolent, nonthreatening speech."); *United States v. Tobin*, 480 F.3d 53, 56 (1st Cir. 2007) ("[N]othing in the term 'harass' limits it to threatening or frightening conduct.").

Some of the foregoing courts, taking their lead from the First Circuit in *Ackell*, have read 'intent to . . . harass,' as referring to criminal harassment," which *Ackell* opined without citation was "unprotected." *Ackell*, 907 F.3d at 76. Recognizing that this Court is bound by *Ackell*, the defense nonetheless respectfully submits that such limiting construction of the statute is not supportable. Neither *Ackell* nor the subsequent decisions that have cited *Ackell* on this point explained what "criminal harassment" entails or why it is not protected by the First Amendment.

---

[5] While the *Ackell* defendant did not sufficiently demonstrate the overbreadth of the statute, *see infra* page 12, *Counterman* (issued five years after *Ackell*) has since laid the issue bare. Indeed, as the *Ackell* Court acknowledged, "the necessary subjective intent one needs to make a true threat [wa]s rather hazy" prior to *Counterman*. *Ackell*, 907 F.3d at 77, n.4.

10

*Id*. at 76; *United States v. Jubert*, 139 F.4th 484, 495 (5th Cir. 2025); *Yung*, 37 F.4th at 80; *Sryniawski*, 48 F.4th at 588. The answer, of course, cannot lie in §2261A's prohibition of harassment. Such an argument would be "circular and unpersuasive. Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized." *Sryniawski*, 48 F.4th at 588.

Nonetheless, even with the intent to harass or intimidate *mens rea* requirement ("criminal" or otherwise), §2261A still permits prosecution of a substantial amount of speech that *Counterman* protects. For example, as the Third Circuit has observed, "[r]anting in the comments section of a website that a senator voted to lock refugee kids in cages could well" constitute "harassment" under a broad definition of that term, and thus satisfy the facial language of §2261A. *Yung*, 37 F.4th at 78. Even "negative restaurant reviews left on Google or Yelp, irate emails sent to service providers (contractors, plumbers, etc.), . . . or antagonistic comments left on news sites are often persistently annoying or even scary. Each might satisfy the statute's act and intent elements, read broadly, and (depending on the recipient's reaction) the result element too." *Id.* (citation omitted); *see also Counterman*, 600 U.S. at 87 ("Without sufficient protection for unintentionally threatening speech, a high school student who is still learning norms around appropriate language could easily go to prison for sending another student violent music lyrics, or for unreflectingly using language he read in an online forum.") (Sotomayor, J., concurring).

In each of the foregoing examples, the defendant could be said to have acted with the intent to "harass" and/or "intimidate," "criminal" or otherwise. Moreover, in several of the examples, a reasonable person might find the communications distressing, even substantially so.

11

Indeed, "[m]uch of this speech exists in a gray area where it will be quite hard to predict whether a jury would find it threatening." *Counterman*, 600 U.S. at 88 (Sotomayor, J., concurring). But predicating criminal liability on a finding that the defendant's speech "would be reasonably expected to cause substantial emotional distress," §2261A(1)(B) and (2)(B), is precisely what *Counterman* held would "discourage the uninhibited, robust, and wide-open debate that the First Amendment is intended to protect." 600 U.S. at 78 (citations omitted).[6]

    E.  *The First Circuit did not have the benefit of Counterman in deciding Ackell.*

In *Ackell*, the defendant did argue, *inter alia*, that the new "reasonable-person standard embedded in the statute's harm-caused element criminalizes protected speech by allowing for a conviction when no harm has actually occurred." *Ackell*, 907 F.3d at 75. In rejecting the challenge, the First Circuit noted that the defendant was "correct that the 'reasonable person standard' embedded in the harm element would permit a conviction in the absence of any actual harm," but ultimately ruled that he "fail[ed] to articulate why exactly that would violate the First Amendment—to say nothing of the even higher bar [a defendant] must clear amid a facial overbreadth challenge." *Id.* at 76. In the end, "while acknowledging that §2261A(2)(B) could have an unconstitutional application, and remaining cognizant of the chilling-effect-related concerns inherent in declining to invalidate a statute that can be applied to violate the First Amendment," the Court was "unconvinced" that the statute was "facially overbroad." *Id.* at 77.

---

[6] *United States v. Dennis*, 132 F.4th 214, 230 (2d Cir. 2025), rejected an as-applied challenge post-*Counterman*, holding that §2261A's requirement of an intent to harass or intimidate was a "higher *mens rea* requirement" than that imposed by *Counterman*. But, for the reasons detailed herein, intent to harass is not the same as demanding proof that the speaker "consciously accepted a substantial risk of inflicting serious harm," *Counterman*, 600 U.S. at 80, nor does it cure the ills of the objective standard.

Whatever the reach or breadth of the Court's decision in *Ackell*, the First Circuit did not have the benefit of *Counterman* in reaching its decision, and the Supreme Court has now explained "why exactly" the reasonable person standard violates the First Amendment. For this reason, Mr. Spofford respectfully submits the *Ackell* decision, on this issue, is not binding on the Court.

### III.  Conclusion.

For the foregoing reasons, Mr. Spofford respectfully requests that the Court issue an order dismissing the Indictment in this matter.

Respectfully Submitted,
ERIC SPOFFORD
By His Attorney,

**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: December 5, 2025

### CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this date, December 5, 2025, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants.

**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.